Civil Action No. 1:14-cv-02209-CRC

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

**RECEIVED**

FEB - 1 2015

Clerk, U.S. District and
Bankruptcy Courts

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | Adversary No. 14-10014 |
| EX REL | ) | |
| STEPHEN THOMAS YELVERTON | ) | Bankruptcy No. 09-00414 |
| for the benefit of his Creditors | ) | |
| | ) | Chapter 7 |
| Appellant/Debtor | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| | ) | |
| FEDERAL INSURANCE COMPANY | ) | |
| as | ) | |
| SURETY BOND | ) | |
| | ) | |
| for the Chapter 7 Trustee in his | ) | |
| Official Capacity | ) | |
| | ) | |
| et als. | ) | |
| | ) | |
| Appellees/Defendants | ) | |

Appeal from the United States Bankruptcy Court
for the District of Columbia

BRIEF OF IFP APPELLANT AND ADDENDUM

and

REQUEST FOR CERTIFICATION BY THE DISTRICT COURT
SUA SPONTE FOR IMMEDIATE APPEAL
TO THE UNITED STATES COURT OF APPEALS
PER 28 U.S.C. 158 (d)(2) and FRBP, Rule 8006 (f)

Stephen Thomas Yelverton, Pro Se
601 Pennsylvania Ave., N.W.,
Suite 900 South
Washington, DC 20004
Tel. 202-702-6708  Fax 202-403-3801
styelv@aol.com

Table of Contents

Page(s)

Table of Cases and Authorities…………………………………………… 4-7

Statement of the Basis of Appellate Jurisdiction……………………… 8

Statement of the Issues Presented……………………………………… 8

Applicable Standard of Appellate Review……………………………… 9

Statement of the Case…………………………………………………… 9

Statement of the Facts…………………………………………………… 11

Summary of Arguments………………………………………………….. 18

Arguments……………………………………………………………….. 19

  (a) The Chapter 7 Trustee, Wendell W. Webster and his law firm,
       are barred by a conflict of interest under the D.C. Rules of
       Professional Conduct from representing the Surety Bond ………... 19

  (b) The Debtor has Article III "standing" to pursue the
       Adversary Proceeding and Appeal…………………………………… 20

  (c) Res Judicata and Collateral Estoppel are not applicable
       to this Adversary Proceeding……………………………………… 21

  (d) Approval of the Settlement Agreement does not
       preclude claims of breach of fiduciary duties
       by the Chapter 7 Trustee…………………………………………… 23

  (e) The Chapter 7 Trustee, Webster, in his Official Capacity,
       breached his fiduciary duties to the Creditors and Debtor……… 25

  (f) The Motion to Certify a Class Action on behalf of Creditors
       was erroneously denied…………………………………………….. 27

  (g) The Amended Complaint was erroneously dismissed under
       FRCP, Rule 12 (b)(6)……………………………………………… 28

  (h) The Bankruptcy Court failed to make any substantive analysis
       that the filings by the Debtor were indisputably absent any
       factual and legal basis…………………………………………… 31

Page(s)

Request for Certification by the District Court Sua Sponte
for Immediate Appeal to the United States Court of Appeals
per 28 U.S.C. 158 (d)(2) and FRBP, Rule 8006 (f)…………………………. 32

Requested Relief in this Appeal……………………………………………… 33

ADDENDUM …………………………………………………………………….. 35

Statutes and Rules

11 U.S.C. 322………………………………………………………………….. 36

28 U.S.C. 158 (d)(2)…………………………………………………………….. 37

FRBP, Rule 2010 (b)…………………………………………………………….. 38

FRBP, Rule 8006 (f)…………………………………………………………… 39

Bankruptcy Decisions to be Certified to the
United States Court of Appeals…………………………………………….. 40

CERTIFICATE OF SERVICE………………………………………………… 41

## Table of Cases and Authorities

Page(s)

*11 U.S.C. 322…………………………………………………………… 9, 11, 18, 22

11 U.S.C. 324……………………………………………………………  17

11 U.S.C. 363 (b)………………………………………………………..  17

*11 U.S.C. 558………………………………………………………….. 18, 26-27

28 U.S.C. 157 (c)(1)………………………………………………………  8-9

28 U.S.C. 158 (a)(1)……………………………………………………..  8-9

*28 U.S.C. 158 (d)(2)……………………………………………………  32-33

*FRBP, Rule 2010 (b)……………………………………………………  9, 18

*FRCP, Rule 7001 (1)…………………………………………………… 22, 33

*FRBP, Rule 8006 (f)..……………………………………………………  32

FRCP, Rule 12 (b)(6), and Twombly/Iqbal…………………………… 11, 18, 27-30

FRCP, Rule 15 (a)(2)……………………………………………………  30

N.C.G.S., Sections 55-14-30 (ii), 55-14-31, and 55-14-32…………………… .  12

*D.C. Rules of Professional Conduct, Rule 1.7 (b)(4)………………………  19-20

*Collier on Bankruptcy, Section 70-09 (14th Ed. 1962)………………………  20

*Moore's Federal Practice, Section 60.33, at p. 359 (2nd Ed. 1985)…………….. 23

*Restatement (Second) Judgments, Section 26, cmt j………………………… 21-22, 33

*Burlingham v. Crouse, 228 U.S. 459, 473 (1913)……………………………. 18, 32

Erikson v. Pardus,
    127 S.Ct. 2197, 2200 (2007)…………………………………………….. 29

*Ginsberg v. Granados,
    963 A.2d 1134, 1139 (D.C. 2009)……………………………………….  31

Page(s)

*Greenwich Ins. Co. v. ICE,
  541 F.Supp.2d 327, 331 (D.D.C. 2008)……………………………………………  19

*Grimes v. Miller,
  448 F.Supp.2d 664, 669-670 (D. Md. 2006)…………………………………… 21, 33

Harris v. County of Orange,
  682 F.3d 1126, 1133 (9th Cir. 2012)……………………………………………  21

*Hazel-Atlas Glass Co. v. Hartford Empire Co.,
  322 U.S. 238, 245-246 (1944)…………………………………………………..  23.

Holmes-Martin v. Leavitt,
  569 F.Supp.2d 184, 193 (D.D.C. 2008)…………………………………………  29

Hope 7 Monroe Street Partnership Ltd. v. Riaso,
  473 B.R. 1, 6-7 (D.D.C. 2012)………………………………………………  9, 24

*In Re AFI Holdings, Inc.,
  530 F.3d 832, 844 (9th Cir. 2008)………………………………………………  21

*In Re AKL,
  397 B.R. 546, 548 (Bkrtcy. D.D.C. 2008)…………………………………… 20, 25

*In Re Anderson,
  377 B.R. 865, 872 (6th Cir. BAP 2007)…………………………………………  24

*In Re Andrews,
  80 F.3d 906, 909-910 (4th Cir. 1996)…………………………………………  20

In Re Avis,
  178 F.3d 718, 720 (4th Cir. 1999)…………………………………………………  20

In Re Capitol Hill Group,
  313 B.R. 344, 348-349 (D.D.C. 2004)…………………………………...…………  9

In Re Covington,
  368 B.R. 38, 41-42 (Bkrtcy. E.D. Cal. 2006)……………………………………  26

*In Re Delaney,
  819 A.2d 968, 999 (D.C. 2003)…………………………………………………  31

In Re Gorski,
  766 F.2d 723, 727 (2nd Cir. 1985)………………………………………………  27

Page(s)

*In Re Granite Partners, L.P.,
    219 B.R. 22, 35 (Bkrtcy. S.D.N.Y. 1998)……………………………………… 25

In Re Hope,
    231 B.R. 403, 412 (Bkrtcy. D.D.C. 1999)……………………………………….. 20

In Re de Hertogh,
    412 B.R. 24, 31 (Bkrtcy. D. Conn. 2009)……………………………………  20

*In Re Morgan,
    374 B.R. 838, 855-856 (8th Cir. BAP 2008)……………………………………  26

In Re Novak,
    383 B.R. 660 (Bkrtcy. W.D. Mich. 2008)……………………………………  24

*In Re Powell,
    851 F.2d 427, 431, and n. 14 (D.C. Cir. 1988)……………………………….  31

In Re Schooler, 725 F.3d 498 (5th Cir. 2013)……………………………………  9

*In Re Silver Oak Homes, Ltd.,
    167 B.R. 389, 398-399 (Bkrtcy. D. Md. 1994)……………………………….  26

*In Re Teknek, Inc., 563 F.3d 639, 645 (7th Cir. 2009)………………………………… 26

*In Re Vebeliunas,
    231 B.R. 181, 187-196 (Bkrtcy. S.D. N.Y. 1999)……………………………..  30

*In Re Woolsey,
    454 B.R. 782, 787 (Bkrtcy. D. Idaho 2011)……………………………………… 20

Kaempfer v. Brown,
    872 F.2d 496, 496 (D.C. Cir. 1989)………………………………………………  32

*Lawlor v. Nat'l Screen, 349 U.S. 322, 327-328 (1955)………………………………… 22, 33

*Leftwich v. Gallaudet,
    878 F.Supp.2d 81, 90 (D.D.C. 2012)……………………..................................... 27, 30

Martin v. Malhoyt,
    830 F.2d 237, 264 (D.C. Cir. 1987)……………………………………………  9

*McGuirl v. White,
    86 F.3d 1232, 1234-1236 (D.C. Cir. 1996)…………………………………….  20

Page(s)

Miller v. Insulation Contractors Inc.,
    608 F.Supp.2d 97, 106 (D.D.C. 2009)…………………………………………… 29

*Naegle v. Albers,
    355 F.Supp.2d 129, 148 (D.D.C. 2005)……………………………………….. 32

Nestor v. Pratt & Whitney,
    466 F.3d 65, 73-74, and n. 10 (2nd Cir. 2006)………………………………….. 21

*Nietzke v. Williams, 490 U.S 319, 325 (1989)……………………………………. 31

North v. Walsh, 881 F.2d 1088, 1093 (D.C. Cir. 1989) …………………………. 21

*Otherson v. Department of Justice,
    711 F.2d 267, 273 (D.C. Cir. 1983)…………………….................................. … 22, 33

*Perry v. American Airlines, Inc.,
    405 F.Supp.2d 700, 706, and n. 5 (E.D. Va. 2005)…………………………… 21,33

*Richardson v. D.C., 2008 WL 2396186 (D.C. Cir. 2008)……………………….. 32

*Robbins v. Wilkie,
    433 F.3d 765, 768-769 (10th Cir. 2006)………………………………………. 24

*Rudder v. Williams, 666 F.3d 790, 796 (D.C. Cir. 2012)……………………….. 30

*Scheur v. Rhodes, 416 U.S. 232, 236 (1974)…………………………………… 27, 30

*Segal v. Rochelle, 382 U.S. 375, 377-380 (1966)……………………………… 20, 25

*Sills v. Bureau of Prisons,
    761 F.2d 792, 794-795 (D.C. Cir. 1985)………………………………………. 31

Speleos v. McCarthy, 201 B.R. 325, 330 (D.D.C. 1996)………………………... 31

*Stanton v. District of Columbia,
    127 F.3d 72, 78, and n. 4 (D.C. Cir. 1997)…………………………………… 22,33

*Warren v. D.C., 353 F.3d 36, 39-40 (D.C. Cir. 2004)…………………………… 29-30

*Yadkin Valley Bank & Trust Co. v. McGee,
    819 F.2d 74, 76 (4th Cir. 1987)………………………………………………... 27

*Cases which are chiefly relied upon

## Statement of the Basis of Appellate Jurisdiction

In the <u>Judgment</u>, entered September 25, 2014, in Docket Entry No. 85, at para. 4, the Bankruptcy Court left open the question as to whether this would be an Appeal under 28 U.S.C. 158 (a)(1), from a final decision in an Adversary Proceeding, or whether it has presented proposed findings of fact and conclusions of law from the Adversary Proceeding to the District Court to be reviewed <u>de novo</u>, under 28 U.S.C. 157 (c)(1). In either case, the District Court would have jurisdiction to hear this matter.

## Statement of the Issues Presented

(a) Whether the Chapter 7 Trustee, Wendell W. Webster and his law firm, are barred by a conflict of interest under the D.C. Rules of Professional Conduct from representing the Surety Bond?

(b) Whether the Debtor has Article III "standing" to pursue this Adversary Proceeding and Appeal?

(c) Whether the Bankruptcy Court erred by ruling that Res Judicata and Collateral Estoppel are applicable to this Adversary Proceeding?

(d) Whether the Bankruptcy Court erred by ruling that approval of the Settlement Agreement precluded claims of breach of fiduciary duties by the Chapter 7 Trustee?

(e) Whether the Chapter 7 Trustee, Wendell W. Webster, in his Official Capacity, breached his fiduciary duties to the Creditors and the Debtor?

(f) Whether the Bankruptcy Court erred by <u>not</u> allowing a Class Action on behalf of the Creditors for the breach of fiduciary duties by Webster in his Official Capacity as Chapter 7 Trustee?

(g) Whether the Bankruptcy Court erred by dismissing this Adversary Proceeding and Complaint under FRCP Rule 12 (b)(6)?

(h) Whether the Bankruptcy Court erred by cavalierly bandying the label "frivolous" as to the filings made by the Debtor to defend his interests and those of his Creditors, where the Court did <u>no</u> substantive analysis that the filings were "indisputably <u>absent</u> any factual and legal basis"?

8

Statement of Applicable Standard of Appellate Review

The required standard of review is <u>de novo</u> for questions of law in a Bankruptcy appeal under 28 U.S.C. 158 (a)(1), or in proposed findings of fact and conclusions of law under 28 U.S.C. 157 (c)(1). <u>In Re Capitol Hill Group</u>, 313 B.R. 344, 348-349 (D.D.C. 2004). Where there is <u>de novo</u> review, there is <u>no</u> Res Judicata. <u>Martin v. Malhoyt</u>, 830 F.2d 237, 264 (D.C. Cir. 1987).

The Bankruptcy Court conducted <u>no</u> evidentiary hearings, and thus could properly have made <u>no</u> findings of fact.

The Bankruptcy Court engages in an "abuse of discretion" when it relies upon clearly erroneous facts or upon facts <u>not</u> in the record, fails to consider a relevant factor, or applies the wrong legal standard. <u>Hope 7 v. Riaso</u>, 473 B.R. 1, 6-7 (D.D.C. 2012).

Statement of the Case

1. The Debtor commenced this Adversary Proceeding on May 30, 2014, as a "party in interest" under the provisions of 11 U.S.C. 322 and FRBP, Rule 2010 (b). These provisions allow an action for monetary damages against the Surety Bond for breach of fiduciary duties by the Chapter 7 Trustee in his Official Capacity. The Complaint was Amended as of Right on June 5, 2014. See, Docket Entry No. 4.

2. Such action under 11 U.S.C. 322 is in the name of the United States of America and for the benefit of the Creditors, as well as the Debtor and the Estate, for monetary damages caused by the Trustee in <u>not</u> faithfully and loyally carrying out his fiduciary duties to his beneficiaries. The Surety Bond acts as an independent guarantor of payment of the claims, and <u>not</u> as an insurer, and where the Surety Bond may require the Trustee to reimburse it for the claims paid. See, <u>In Re Schooler</u>, 725 F.3d 498 (5th Cir. 2013).

9

3. The Office of United States Trustee, where this Office selected and supervised the Chapter 7 Trustee, and where this Office obtained the Surety Bond, for the benefit of the Debtor, Creditors, and the Estate, failed to disclose the correct name and address of the Surety Bond, which prevented the Debtor from properly identifying the name and address on the Complaint of the actual Defendant and from properly making service of the Summons on the actual Defendant. See, Debtor's Motion, filed August 12, 2014, at Docket Entry No. 42.

4. The actions of the Office of United States Trustee, which were for the benefit of the Chapter 7 Trustee, caused a delay of three months in serving the Summons on Federal Insurance Company, the duly authorized Surety Bond and required Defendant.

5. The Bankruptcy Court allowed the Chapter 7 Trustee, Wendell W. Webster, Esq., in his Individual Capacity, to Intervene as a party in this Adversary Proceeding. See, Order, entered September 2, 2014, at Docket Entry No. 61.

6. The Bankruptcy Court then allowed Webster and his law firm to represent Federal Insurance Company as the Surety Bond in this Adversary Proceeding. See, Opposition filed by Webster's law firm on behalf of the Surety Bond, entered on November 17, 2014, at Docket Entry No. 94.

7. There has been no waiver by Federal Insurance Company as the Surety Bond of any potential conflict of interest between it as an independent guarantor of any claims to be paid, and with Webster to indemnify the Surety Bond for any claims paid by it.

8. The Debtor filed a Motion for Leave to Amend the Complaint against the Surety Bond to Join a Creditor and to Certify the Complaint as a Class Action for the benefit of Creditors. See, Motion, entered August 28, 2014, at Docket Entry No. 57.

10

9. Webster and his law firm, in his Individual Capacity, opposed the Motion to Join a Creditor and to Certify the Complaint as a Class Action for the benefit of Creditors. See, Response, entered September 11, 2014, at Docket Entry No. 72.

10. There was <u>no</u> Answer to the Section 322 Complaint, or any responsive motion under FRCP, Rule 12 (b), filed by or in the name of the Surety Bond by Webster and his law firm, or by other entity.

11. The Bankruptcy Court dismissed this Adversary Proceeding and Section 322 Complaint under FRCP, Rule 12 (b)(6), on a Motion to Dismiss filed by Webster and his law firm in his Individual Capacity. See, Docket Entries Nos. 84 and 85, entered September 25, 2014.

12. The Debtor timely filed a Motion to Alter or Amend the Judgment per FRCP, Rule 59 (e), and a Motion for Leave to Amend the Complaint per FRCP, Rule 15 (a), in order to correct any possible deficiencies under the <u>Twombly/Iqbal</u> standard, per FRCP, Rule 12 (b)(6). See, Docket Entry No. 90, entered October 9, 2014. The Bankruptcy Court denied the Debtor's Motions. See, Docket Entries Nos. 99 and 100, entered December 9, 2014.

13. The Debtor's Notice of Appeal was timely filed. See, Docket Entry No. 104, entered December 23, 2014.

Statement of the Facts

14. On May 14, 2009, the Debtor filed his petition for Chapter 11 Bankruptcy in Case No. 09-00414 in the District of Columbia. On July 29, 2009, he commenced his action in Diversity against his siblings, Deborah Marm and Phyllis Edmundson, in Case No. 5:09-cv-331-FL in the U.S. District Court in the Eastern District of North Carolina.

11

15.  The Debtor made monetary claims of up to $3 Million against Marm and Edmundson in Tort and Contract for misappropriating and converting for their own personal use his lawfully owned stock and equity in Yelverton Farms, Ltd., a North Carolina closely-held corporation, which stock is property of the Estate.

16.  The Debtor also made a demand that Yelverton Farms, Ltd. be placed into Receivership under N.C.G.S., Sections 55-14-30 (ii), 55-14-31, and 55-14-32, in order to Dissolve the corporation and Liquate its assets, where the assets would be sold as a whole to the highest bidder.   This is a statutory right of a stockholder in a closely-held corporation to be done by the Court in equity by an expedited Hearing without a Jury

17.  Under N.C.G.S., Section 55-14-31 (d), Marm and Edmundson could prevent Dissolution and Liquidation of Yelverton Farms, Ltd., only by buying out Yelverton's stock and equity at his proportionate share of appraised FMV of the business as a whole. See, Amended Complaint, at paras. 44-45, Docket Entry No. 4, entered June 5, 2014.

18.   Yelverton had himself established Yelverton Farms, Ltd. in 1994 for the purpose of growing genetically modified pigs under a Production Contract with Maxwell Foods, Inc., which is affiliated with Smithfield Foods, Inc.  He individually invested at least $700,000, to build the required infrastructure for the automated "pig finishing" operation, which did not include land costs. The land was held in a family trust, where he was a co-owner and beneficiary. See, Complaint, at para. 38.

19. Yelverton obtained in 1994 from Maxwell Foods, Inc., in his sole individual name, an exclusive Production Contract to grow their genetically modified pigs in a defined environmentally approved geographic area. Marm and Edmundson have no rights under this Production Contract. See, Complaint, at para. 39

12

20.    Yelverton, as the Principal under the Production Contract, designated Yelverton Farms, Ltd., to be his Agent in the "pig finishing" operation and for the corporation to utilize the automated production facilities, in which he had personally invested at least $700,000.  See, Complaint, at para. 40.

21.  Yelverton delegated to Marm and Edmundson certain duties as his Agents in the "pig finishing" operation, which they subsequently abused in order to take possession and control of his stock and equity in Yelverton Farms, Ltd., and his Production Contract, for their own personal and financial benefit.  See, Complaint, at para. 41.

22.  In his Bankruptcy case, Yelverton placed into the Estate in May 2009, his individually owned 1,333.3 shares of stock and equity in Yelverton Farms, Ltd., and his litigation claims in the Eastern District of North Carolina against Marm and Edmundson of up to $3 Million, to be for the benefit of his Creditors.  See, Complaint, para. 43.

23.  Marm and Edmundson have refused to turn over to the Chapter 7 Trustee their possession and control since at least 2008 of the Debtor's 1,333.3 shares of stock in Yelverton Farms, Ltd.  See, Adversary Proceeding No. 10-10003.

24.  In the Eastern District of North Carolina, Marm and Edmundson filed a Motion to Dismiss the Complaint of the Debtor, on March 17, 2010, on the basis that Wade H. Atkinson, Jr., a client of their North Carolina counsel, has owned the 1,333.3 shares of stock in Yelverton Farms, Ltd. since May 2008, and that the Debtor is not the owner of the stock. This is their only asserted Affirmative Defense.  See, Complaint, at para. 55.

25. The claim of ownership of the 1,333.3 shares of stock in Yelverton Farms, Ltd. by Atkinson has never been withdrawn by Marm and Edmundson at any time in any proceeding in any Court.

26.   In the Eastern District of North Carolina, Marm and Edmundson filed no Counter-Claims against the Debtor, and they filed no Proof of Claims against him in the Bankruptcy. Atkinson has never made a claim of ownership of the stock.

27.   In the Eastern District of North Carolina, Marm and Edmundson demanded the Court not act upon the Debtor's statutory right as a stockholder for an expeditious Dissolution and Liquidation of Yelverton Farms, Ltd., or buy-out at FMV, and demanded a Stay of Discovery on the Tort and Contract claims against them for up to $3 Million, where they had asserted no Affirmative Defenses. See, Complaint, para. 61.

28. Marm and Edmundson made these demands on the pretense of discussing a Settlement of the case with the Debtor as the Chapter 11 Trustee.  However, at the time of the Settlement meeting at the end of March 2010, Marm and Edmundson refused to meet with the Debtor on the basis that he did not own the stock in Yelverton Farms, Ltd., but was instead owned by Atkinson, who was a client of their North Carolina counsel. See, Complaint, at paras.61-62.

29.   As a result of the demands of Marm and Edmundson for a Stay, the litigation by the Debtor in the Eastern District of North Carolina was halted in 2010, and no ruling on the merits of his claims against them was ever made. See, Complaint, at para. 54.

30.   The U.S. Trustee for the Fourth and D.C. Circuits, Clark McDow, who had served as a political appointee since 1992, and was located in South Carolina, filed on July 6, 2010, a Motion to Involuntarily Convert the Chapter 11 Bankruptcy of the Debtor to Chapter 7.   See, Bankruptcy Docket Entry No. 298.

31.   Marm has been a high-level staff official for Members of the U.S. Congress and the U.S. Senate since 1978, and still serves. See, Complaint, paras. 47-48.

14

32. In his Motion to Involuntarily Convert the Chapter 11 Bankruptcy of Yelverton to Chapter 7, the U.S. Trustee in South Carolina, McDow, acknowledged that it was for the benefit of Marm.  She is <u>not</u> a Creditor of the Debtor, and is <u>not</u> a party to the Bankruptcy, but is a statutory "insider" to the Bankruptcy and is a Congressional "insider." See, Complaint, paras. 47-48.

33. In his Motion to Involuntarily Convert, McDow suggested that it was improper for Yelverton as the Debtor to sue his sibling, Marm, and thus a Chapter 7 Trustee must be appointed to take over the pending litigation against Marm and to Settle these claims, although the conversion was made on a different basis. See, Bankruptcy Docket Entry No. 298. Yelverton was suing Marm to recover his assets for the benefit of his Creditors.

34.  Marm retained the law firm of Womble Carlyle, which is headquartered in North Carolina, to represent her in the Bankruptcy of Yelverton, where Jeffrey L. Tarkenton, Esq., is her counsel, in order to stop the Debtor's litigation against her.

35.  The U.S. Trustee in South Carolina, McDow, appointed in September 2010 the Chapter 7 Trustee for Yelverton's Bankruptcy, who is Wendell W. Webster, Esq., to take control of the pending N.C. litigation against Marm by the Debtor to recover his assets from her.  The Eastern District of North Carolina then removed Yelverton as the Plaintiff and referred the pending civil litigation against Marm to the Bankruptcy Court in D.C. to be Settled by Webster, although there were <u>no</u> Counter-Claims or Proof of Claims by Marm against the Debtor in the Bankruptcy. See, Complaint, paras. 77-78.

36. Webster admitted to the Debtor that he is a "close personal friend" of Marm's Bankruptcy counsel, Tarkenton.  However, Webster failed to disclose this relationship to the Bankruptcy Court and to the Creditors. See, Complaint, at paras. 80 and 83.

15

37. Webster moreover failed to disclose to the Bankruptcy Court and to the Creditors that Marm, as a sibling to the Debtor, is a statutory "insider" to the Bankruptcy, and that she is not a Creditor. See, Complaint, at para. 84.

38. Webster directly "negotiated" the Settlement of the Debtor's litigation claims against Marm, with his "close personal friend," Tarkenton, who is counsel for Marm. The litigation claims against Marm, and the stock in Yelverton Farms, Ltd., are Yelverton's only remaining assets to pay Creditors with claims of over $500,000, which includes Domestic Support. See, Complaint, paras. 88 and 98.

39. Webster commenced his Settlement "negotiations" with Tarkenton in December 2010, which was after Yelverton had been Discharged from unsecured Creditor claims of over $1 Million. There were no Creditors included in the Settlement "negotiations." Webster and Tarkenton did not execute a Settlement Agreement until March 25, 2012, in which no Creditor is a party. See, Complaint, para. 98.

40. Under the terms of the Settlement Agreement, which has not been consummated, the 1,333.3 shares of stock in Yelverton Farms, Ltd. would be transferred to Marm and Edmundson, and they would pay Webster, the Chapter 7 Trustee, the total sum of $110,000, for a release of the Debtor's pending litigation claims of up to $3 Million against them in the Eastern District of North Carolina, where they have no Affirmative Defenses, no Counter-Claims, and no Proof of Claims. See, Complaint, para. 102.

41. There would be no payments by Marm and Edmundson to any Creditors, or to the Debtor's Spouse, who is a priority Creditor. The amount of $110,000 would only be enough to pay for Webster's legal fees for "negotiating" the Settlement Agreement with his "close personal friend," Tarkenton. See, Complaint, para. 102.

16

42.    As a result of the Settlement with Marm that Webster and Tarkenton "negotiated," Yelverton would be left with no assets to pay non-Discharged debt of over $400,000, plus $17,000 per month, for Domestic Support. See, Complaint, para. 102.

43.    Webster, as the Chapter 7 Trustee, during the course of the Bankruptcy proceeding, opposed an auction under 11 U.S.C. 363 (b) of the assets of the Estate to the highest bidder, with open bidding by Creditors and third-parties, which would maximize a recovery for Creditors. See, Bankruptcy Docket.

44.    Webster, as the Chapter 7 Trustee, during the course of the Bankruptcy proceeding, always sided with Tarkenton on any issues affecting the interests of Marm, where Marm opposed an auction under 11 U.S.C. 363 (b). See, Complaint, para. 105.

45. Webster, as the Chapter 7 Trustee, during the course of the Bankruptcy proceeding, personally attacked and disparaged Yelverton, and smeared his reputation, whenever Yelverton challenged any actions in "collusion" between Webster and Tarkenton that would benefit Marm as a non-Creditor. See, Complaint, para. 106.

46.    Webster, as the Chapter 7 Trustee, Intervened in the Debtor's Domestic Relations proceeding in the D.C. Superior Court, to threaten the Debtor's Spouse, who is a priority Creditor, from demanding property of the Estate that the Trustee had agreed in the Settlement to give Marm, a non-Creditor. See, Complaint, para. 104.

47.    Prior to the Hearing on the Settlement Agreement on June 18, 2012, the Bankruptcy Court denied the Debtor's Motion to Remove the Chapter 7 Trustee under 11 U.S.C. 324 for breach of his fiduciary duties. However, this denial was without prejudice to renewal of claims against the Trustee after the Hearing on the Settlement Agreement. See, Bankruptcy Docket Entry Nos. 460, entered May 14, 2012.

17

### Summary of Arguments

The only purpose of Bankruptcy is to distribute assets of the Estate to the Creditors, and then to give the Debtor a "fresh start" by liberally allowing him all rights under the Bankruptcy Code. Burlingham v. Crouse, 228 U.S. 459, 473 (1913).

The Chapter 7 Trustee, Webster, breached his fiduciary duties to the Creditors by giving in a Settlement Agreement the assets of the Estate to non-Creditors, who are "insiders" to the Bankruptcy, and whose counsel, Tarkenton, is the "close personal friend" of Webster, with the non-Creditors paying just enough for the assets of the Estate to cover only Webster's legal fees and administrative expenses as Trustee. Under 11 U.S.C. 558, a waiver of a defense by the Debtor to the claims does not bind the Estate

Webster further breached his fiduciary duties by personally attacking and smearing the reputation of the Debtor for challenging this "collusive" scheme between Webster and Tarkenton to deprive the Creditors of any assets of the Estate for the benefit of Tarkenton's clients, who are not Creditors, but are "insiders" to the Bankruptcy.

The Adversary Proceeding against the Surety Bond, for monetary damages for breach of fiduciary duties by Webster in his Official Capacity as Chapter 7 Trustee, is authorized by 11 U.S.C. 322 and FRBP, Rule 2010 (b), to be brought in the name of the United States of America for the benefit of Creditors, who were injured by the Trustee.

Res Judicata and Collateral Estoppel are not applicable because the Bankruptcy Court would not allow any action against the Chapter 7 Trustee for breach of his fiduciary duties until after the Hearing on the Settlement Agreement on June 18, 2012.

In the Decisions on Appeal, the Bankruptcy Court improperly made findings of fact and conclusions of law, which are not allowed under FRCP, Rule 12 (b)(6).

### Arguments

#### (a) The Chapter 7 Trustee, Wendell W. Webster, and his law firm are barred by a conflict of interest under the D.C. Rules of Professional Conduct from representing the Surety Bond

48. The Chapter 7 Trustee, Webster, and his law firm are barred by a conflict of interest under the D.C. Rules of Professional Conduct, Rule 1.7 (b)(4), from representing the Surety Bond, and thus must be disqualified as counsel. See, Brief, paras. 6-7, supra.

49. The Surety Bond, by law, is the Defendant required to be named, whose interests are directly and materially in conflict with those of the Chapter 7 Trustee. The Surety Bond is not an insurer for the Trustee, but a guarantor of claims to be paid for the Trustee's misconduct. It has the public duty to independently investigate the claims of the Creditors and Debtor, and to pay those claims if justified, and then may seek indemnification from the Trustee personally for the claims it paid. Payment from the Estate for the misconduct of the Trustee is not allowed. Greenwich Ins. Co. v. ICE, 541 F.Supp.2d 327, 331 (D.D.C. 2008).

50. By inserting his law firm as counsel for the Surety Bond, Federal Insurance Company, Webster has created the conflict of interest, where his personal interests and those of the Surety Bond are directly and materially in conflict --- the public duty of the Surety Bond to independently investigate the claims and pay them if justified, and the private interests of Webster to minimize and trivialize those claims, and not pay them.

51. Webster inserted his law firm as counsel for the Surety Bond to protect himself from it paying the claims over his objections. But, this is the conflict --- where Webster has no legal right to block the Surety Bond from paying the claims and has no legal right to block it from suing him for indemnification for its payment of the claims.

19

52. Webster has acknowledged that there is <u>no</u> written waiver between him and the Surety Bond as to any potential conflict of interest between them.

53. Thus, the conflict of interest is conclusive, and Webster and his law firm must be disqualified from representing the Surety under Rule 1.7 (b)(4) of the D.C. Rules of Professional Conduct, in order to protect the integrity of the proceeding from "self-dealing" by Webster to the detriment of the Creditors in their claims against the Surety.

54. This conflict of interest by Webster is also another breach of his fiduciary duty of "loyalty" to the Creditors, and another claim against the Surety Bond. <u>In Re Woolsey</u>, 454 B.R. 782, 787 (Bkrtcy. D. Idaho 2011), the Chapter 7 Trustee breaches his fiduciary duty of "loyalty" by engaging in "self-dealing" to the detriment of the Creditors.

(b) <u>The Debtor has Article III "standing" to pursue the Adversary Proceeding and Appeal</u>

55. The Debtor has Article III "standing" to pursue the Adversary Proceeding and Appeal because he has <u>non</u>-Discharged debts of at least $400,000, which would be lessened by reducing the amount paid to the Chapter 7 Trustee because of his breach of fiduciary duties. <u>McGuirl v. White</u>, 86 F.3d 1232, 1234-1236 (D.C. Cir. 1996).

56. The Chapter 7 Debtor, and <u>not</u> the Trustee, moreover has ownership and control over claims arising <u>after</u> the date of his petition for Bankruptcy, which here was on May 14, 2009. This is Hornbook Bankruptcy law. <u>In Re AKL</u>, 397 B.R. 546, 548 (Bkrtcy. D.D.C. 2008); <u>In Re Hope</u>, 231 B.R. 403, 412 (Bkrtcy. D.D.C. 1999), and see, <u>Segal v. Rochelle</u>, 382 U.S. 375, 377-380 (1966), citing to <u>Collier on Bankruptcy</u>, Section 70.09 (14th Ed. 1962). See also, <u>In Re Andrews</u>, 80 F.3d 906, 909-910 (4th Cir. 1996); <u>In Re Avis</u>, 178 F.3d 718, 720 (4th Cir. 1999); and <u>In Re de Hertogh</u>, 412 B.R. 24, 31 (Bkrtcy. D. Conn. 2009). There is <u>no</u> precedent to the contrary in any Circuit.

57. The claims of the Debtor and the Creditors against the Surety Bond arose <u>after</u> September 2010, and occurred in September 2012, and later, where the Chapter 7 Trustee breached his fiduciary duties to the Debtor and his Spouse, a priority Creditor, by maliciously interfering with their Domestic Relations proceeding to threaten the Debtor's Spouse from demanding any property of the Estate, which the Trustee had agreed in the Settlement to give Marm, a <u>non</u>-Creditor and "insider." See, Complaint, para. 104.

58. The Chapter 7 Trustee has the fiduciary duty of "equitable distribution" of assets of the Estate to Creditors. The Trustee has <u>no</u> fiduciary duties to <u>non</u>-Creditors, such as Marm. <u>In Re AFI Holdings, Inc.</u>, 530 F.3d 832, 844 (9th Cir. 2008).

(c) <u>Res Judicata and Collateral Estoppel are not applicable to this Adversary Proceeding</u>

59. The Bankruptcy Court in the <u>Decisions</u>, entered September 25, 2014, at pp. 2, 26-30, and December 9, 2014, at pp. 2-7, erred in holding that Res Judicata is applicable.

60. The <u>Decisions</u> are contrary to established law under the <u>Restatement (Second) Judgments</u>, Section 26 (1)(c), and cmt c, that Res Judicata is <u>not</u> applicable where the claims in the second action could <u>not</u> have been brought in the first action. See, <u>North v. Walsh</u>, 881 F.2d 1088, 1093 (D.C. Cir. 1989); <u>Nestor v. Pratt & Whitney</u>, 466 F.3d 65, 73-74, and n. 10 (2nd Cir. 2006); <u>Harris v. County of Orange</u>, 682 F.3d 1126, 1133 (9th Cir. 2012); <u>Grimes v. Miller</u>, 448 F.Supp.2d 664, 669-670 (D.Md. 2006); <u>Perry v. American Airlines, Inc.</u>, 405 F.Supp.2d 700, 706, and n. 5 (E.D. Va. 2005).

61. Under the <u>Restatement (Second) Judgments</u>, Section 26 (1)(c), and cmt c:

"where the Plaintiff was unable to rely upon a certain theory of the case or to seek a certain remedy or form of relief in the first action because of limitations on the subject-matter of the Court or restrictions on their authority to entertain multiple theories or demands for multiple remedies or forms of relief in a single action, and the Plaintiff desires in the second action to rely upon that theory or to seek that remedy or form of relief," there is <u>no</u> applicability of Res Judicata or a prohibition on Claim Splitting.

62.   The Bankruptcy Court had ruled that the Debtor could <u>not</u> bring claims against the Chapter 7 Trustee for breach of his fiduciary duties until <u>after</u> the Settlement Agreement with Marm had been acted upon in June 2012. See, <u>Order</u>, entered May 14, 2012, at Docket Entry No. 460.   Thus, Section 26 (1)(c) of the <u>Restatement</u> governs the claims and causes of action in this Adversary Proceeding. <u>Grimes</u>, <u>id.</u>; <u>Perry, id</u>.

63.   Under FRBP, Rule 7001 (1), claims for monetary damages must be brought in an Adversary Proceeding, and <u>not</u> in the Bankruptcy proceeding.   Claims under 11 U.S.C. 322 are for monetary damages. They were timely brought in this Adversary Proceeding within the statute of limitations under 11 U.S.C. 322. Thus, Section 26 (1)(c) of the <u>Restatement</u> also governs on this basis.

64.   Res Judicata is moreover <u>not</u> applicable where the claims in the second proceeding arose <u>after</u> a previous claim was adjudicated in the first proceeding, even if the claims are identical. <u>Stanton v. District of Columbia</u>, 127 F.3d 72, 78, and n. 4 (D.C. Cir. 1997), citing to <u>Lawlor v. Nat'l Screen</u>, 349 U.S. 322, 327-328 (1955).

65.   The Hearing as to the Chapter 7 Trustee's Settlement Agreement was held on June 18, 2012. The Amended Complaint, at paras. 83-84, 103-106, raises claims and causes of action for breach of fiduciary duties by the Trustee against Creditors and the Debtor that arose in September 2012, and after, and continue to the present.

66.   The <u>Decision</u>, entered September 25, 2014, at pp. 2, 31-33, erred in holding that this Adversary Proceeding is barred by Collateral Estoppel.   It is <u>not</u> applicable unless the issues in the second proceeding are "<u>identical</u>" to the issues in the first proceeding. <u>Otherson v. Department of Justice</u>, 711 F.2d 267, 273 (D.C. Cir. 1983).

67. The Bankruptcy Court made <u>no</u> findings that the issues in the first proceeding – the Settlement Hearing on June 18, 2012, -- are "<u>identical</u>" to the issues in the second proceeding -- this Adversary Proceeding. Rather, it only suggested that they might be <u>similar</u> in some respects. Thus, there could be <u>no</u> Collateral Estoppel as a matter of law.

68. Even if Res Judicata and Collateral Estoppel are applicable to this Adversary Proceeding by reason of the Approval of the Settlement Agreement by the Bankruptcy Court, the Approval can be "collaterally attacked" and VOIDED by a showing of "fraud on the Court," which may be a breach of fiduciary duties by "collusion." <u>Moore's Federal Practice</u>, Section 60.33, at p. 359 (2nd Ed. 1985); <u>Hazel-Atlas Glass Co. v. Hartford Empire Co.</u>, 322 U.S. 238, 245-246 (1944).

69.     The Amended Complaint in this Adversary Proceeding makes specific allegations of fact of "collusion" between Webster and Tarkenton, his "close personal friend," to injure the Creditors for the benefit of Tarkenton's client, Marm, a <u>non</u>-Creditor, by giving her the assets of the Estate to the exclusion and financial detriment of the Creditors. See, Complaint, at paras. 80, 84, 87, 90-91, 98, 100-103, 105-106.

### (d) Approval of the Settlement Agreement does not preclude claims of breach of fiduciary duties by the Chapter 7 Trustee

70. The Bankruptcy Court in the <u>Decision</u>, entered December 9, 2014, at pp. 2-6, erred in holding that its approval of the Settlement Agreement "amounts in <u>substance</u> to an order barring Creditors and the Debtor from later suing the Chapter 7 Trustee for entering into the Settlement" because any previous objection to the Settlement Agreement amounts to the same as the claim for breach of fiduciary duties against the Trustee." However, the Bankruptcy Court does <u>not</u> cite in support any precedent from any Circuit Court.

71. The "Trustee fiduciary duty" standard for approving Settlements has been expressly rejected in In Re Anderson, 377 B.R. 865, 872 (6th Cir. BAP 2007). There is no precedent by any Circuit that the approval of a Settlement by a Bankruptcy Court somehow insulates the Chapter 7 Trustee from being sued for breach of his fiduciary duties in overall administering the Estate.

72. The reliance of the Bankruptcy Court on In Re Novak, 383 B.R. 660 (Bkrtcy. W.D. Mich. 2008), is wholly misplaced. That decision is an "outlier" and has not been followed by any Court in any Circuit, other than by the D.C. Bankruptcy Court.

73. The approval by a Court for a public official to carry out lawful duties does not authorize that official to act unlawfully in carrying them out. Robbins v. Wilkie, 433 F.3d 765, 768-769 (10th Cir. 2006).

74. The unfounded premise of the Bankruptcy Court, that the Debtor is suing the Chapter 7 Trustee for breach of fiduciary duties simply because the Debtor does not believe the Settlement Agreement is "reasonable" as to the amount being paid, is an improper finding of fact that is based upon no Record evidence, and thus must be rejected as "an abuse of discretion" by the Court. Hope 7 v. Riaso, id.

75. The Record conclusively shows the Debtor is suing the Surety Bond for breach of fiduciary duties by the Chapter 7 Trustee because he allegedly breached his fiduciary duties in overall administering the Estate, where such breaches are not decisionally significant with respect to whether the Settlement Agreement is "reasonable" as to the amount paid to the Trustee. See, Complaint, at paras. 80-106.

76. The Bankruptcy Court in Approving the Settlement made no findings of fact inconsistent with the Trustee breaching his fiduciary duties to the Creditors.

77. The Chapter 7 Trustee's Settlement Agreement with Marm improperly includes property of the Debtor, which are post-Petition litigation claims that are not legally included within the Estate. See, Bankruptcy Docket Entry No. 541, and Exhibits, entered May 4, 2012, and Segal v. Rochelle, id, at para. 56, supra.

78. Where a Settlement Agreement includes property that is not property of the Estate, the approval of the Settlement would not insulate the Chapter 7 Trustee for damages from breach of his fiduciary duties. AKL, id. at 551, a Trustee may be sued for damages to property that he holds which is not property of the Estate.

(e)   The Chapter 7 Trustee, Wendell W. Webster, in his Official Capacity breached his fiduciary duties to the Creditors and Debtor

79. The Bankruptcy Court, in its Decision, entered on September 25, 2014, at pp. 10-13, erred in holding that Webster in his Official Capacity as Chapter 7 Trustee did not breach his fiduciary duties to the Creditors by failing to disclose to them and the Bankruptcy Court he is a "close personal friend" of Tarkenton, who as counsel for Marm, "negotiated" the Settlement Agreement with Webster. See, Complaint, at para. 83.

80. The Bankruptcy Court, in its Decision, at p. 11, relied upon In Re Granite Partners, L.P., 219 B.R. 22, 35 (Bkrtcy S.D.N.Y. 1998), but ignored its holding that a Chapter 7 Trustee has the fiduciary duty of disclosure to the Bankruptcy Court and to the Creditors of any personal relationship or possible conflict that might affect his required "disinterested" judgment, regardless of whether it is actually disqualifying, and thus the existence of any arguable conflict must be disclosed if only to explain it away."

81. Under Granite, Webster thereby had the duty of disclosure of his relationship with Tarkenton to the Bankruptcy Court and to the Creditors, and the Debtor had no duty to make this disclosure for Webster, or to raise the issue of non-disclosure by Webster.

82.   The Debtor moreover was not allowed to raise at the Hearing on the Settlement Agreement held on June 18, 2012, any issues of breach of fiduciary duties by Webster.   See, Order, entered May 14, 2012, at Docket Entry No. 460.   Thus, the Bankruptcy Court in its Decision, at p. 13, erred in holding that the Debtor had waived or "forfeited" any claims against Webster for breach of his fiduciary duty of disclosure to the Creditors as to his relationship with Tarkenton.

83.   The Bankruptcy Court also erred by overlooking 11 U.S.C. 558, which does not allow a waiver by the Debtor to be binding on the Estate.

84.   The Bankruptcy Court, in its Decision, at p. 23, erred in holding that "it is not inappropriate for a Chapter 7 Trustee to enter into a Settlement where the proceeds are sufficient to pay only the administrative expenses of the Trustee.   This is contrary to established law that a "lack of recovery for the Creditors creates a conflict of interest between the Trustee and the Creditors." In Re Morgan, 374 B.R. 838, 855-856 (8th Cir. BAP 2008).   See also, In Re Covington, 368 B.R. 38, 41-42 (E.D. Calif. 2006).

85. The duty of the Trustee is to gather assets of the Estate for distribution to the Creditors, and not just the cash proceeds going to himself, with nothing left for Creditors. In Re Teknek, Inc., 563 F.3d 639, 645 (7th Cir. 2009).

86.   The Bankruptcy Court, in its Decision, at p. 19, erred in determining that it is immaterial to the Settlement Agreement that Marm is a statutory "insider" to the Bankruptcy. However, this is contrary to established law in In Re Silver Oak Homes, Ltd., 167 B.R. 389, 398-399 (Bkrtcy. D. Md. 1994), which holds that the Chapter 7 Trustee breaches his fiduciary duties to Creditors by failing to inform them that a sale of assets or claims by him would be acquired by "insiders" to the Bankruptcy.

87. The Bankruptcy Court, in its <u>Decision</u>, at pp. 20, 31-32, erred by finding Webster did <u>not</u> breach his fiduciary duties when acting within his "business judgment" and his "discretion." However, this is contrary to established law in <u>Yadkin Valley Bank & Trust Co. v. McGee</u>, 819 F.2d 74, 76 (4th Cir. 1987), which holds that even "when acting within the business judgment and discretionary bounds of his authority," the Chapter 7 Trustee is liable for "willful and deliberate violations of his fiduciary duties."

88. Whether the Chapter 7 Trustee properly acted within his "business Judgment" is a question of fact and law, which <u>cannot</u> be resolved on a Motion under Rule 12 (b)(6). <u>In Re Gorski</u>, 766 F.2d 723, 727 (2nd Cir. 1985); <u>Leftwich v. Gallaudet</u>, 878 F. Supp.2d 81, 90 (D.D.C. 2012). Questions of law <u>cannot</u> be resolved under Rule 12 (b)(6). <u>Scheur v. Rhodes</u>, 416 U.S. 232, 236 (1974). Thus, the <u>Decision</u> must be Vacated on this basis.

(f) <u>The Motion to Certify a Class Action on behalf of Creditors was erroneously denied</u>

89. The Bankruptcy Court in its <u>Decision</u>, at p. 38, erred in denying the Debtor's Motion to Certify this Adversary Proceeding as a Class Action on behalf of the Creditors. The denial was on the basis that the Debtor had supposedly "forfeited" some of his claims against Webster as the Chapter 7 Trustee, and thereby could <u>not</u> act as a representative for Creditors who had <u>not</u> forfeited these same claims.

90. However, under 11 U.S.C. 558, a waiver of a defense by the Debtor does <u>not</u> bind the Estate. But regardless, there is <u>no</u> prohibition on Joining a Creditor as a co-Plaintiff to be the Class Representative. This was proposed in the Motion to Certify by also naming a Creditor, Stephen E. Powell, as a Class Representative for the Creditors.

91. There is moreover <u>no</u> requirement that a Class Representative be a licensed attorney in the Bankruptcy Court, but only that the Class Representative retains counsel.

92. The Bankruptcy Court also denied Certification as a Class Action on behalf of the Creditors on the purported basis that the Amended Complaint fails to state a claim upon which relief may be granted, per FRCP, Rule 12 (b)(6). However, as demonstrated below, the Amended Complaint properly pleads with factual specificity multiple legally sufficient claims against the Surety Bond because of Webster as the Chapter 7 Trustee breaching his fiduciary duties to the Creditors and to the Debtor.

(g) The Complaint was erroneously dismissed under FRCP, Rule 12 (b)(6)

93. The Bankruptcy Court, in its Decision, at pp. 8--26, erred in dismissing the Complaint under FRCP, Rule 12 (b)(6), on the supposed basis that no specific allegations of fact were made to support the claims under Twombly/Iqbal.

94. However, the Bankruptcy Court inexplicably overlooked paras. 80-106 in the Amended Complaint, with the caption of "Allegations of Facts" and containing specific factual allegations against Webster. These allegations include the following:

"80. After being appointed in September 2010 as the Chapter 7 Trustee by McDow, the U.S. Trustee, Webster acknowledged that he is a long-time "close personal friend" of Tarkenton, who is an attorney at Womble Carlyle and serves as counsel for Marm in Yelverton's Bankruptcy."

"83. Webster failed to disclose to the Creditors and to the Bankruptcy Court that he is a long-time 'close personal friend' with Tarkenton, who is counsel for both Marm and JPMorgan in Yelverton's Bankruptcy."

"84. Webster failed to disclose to the Creditors and to the Bankruptcy Court that Marm, as a sibling to Yelverton, is a statutory per se "insider" to Debtor Yelverton, and that her interests would conclusively be adverse to the Creditors."

"91. Webster failed to disclose to Creditors that he would be negotiating with Tarkenton a Settlement of Case No. 5:09-cv-331, which has claims against Marm of up to $3 Million, where these claims and property are Yelverton's only remaining Assets in the Debtor Estate to pay Creditors, and Webster failed to disclose to Creditors that Marm is not a Creditor, but a statutory per se "insider" to Debtor Yelverton, where Marm's interests are conclusively adverse to the Creditors, and where Marm is represented by Webster's "close personal friend," Tarkenton.

"98. In December 2010, Webster started negotiating the Settlement Agreement with his "close personal friend," Tarkenton, on behalf of Marm.   The negotiations continued to March 2012, with the Agreement being signed on March 25, 2012."

"100. During this one year period [December 3, 2010 to December 2, 2011], Webster failed to disclose to Creditors that Marm is a statutory per se 'insider' to the Debtor, and she has possession and control of the Assets of the Debtor Estate, the stock in Yelverton Farms, Ltd., and that her counsel, Tarkenton, Webster's 'close personal friend,' was claiming the stock had no value."

"104. Webster intervened in Yelverton's divorce proceeding to prevent the distribution of Estate property to his Spouse, a Non-Discharged Creditor, whom Webster owed 'fiduciary duties,' and breached these duties to benefit Tarkenton and Marm."

"105. During the course of the Bankruptcy proceeding, Webster has always sided with his "close personal friend," Tarkenton, against Yelverton in all matters, and Webster has always sided with his 'close personal friend," Tarkenton, to favor Marm's interests in all matters, which are conclusively adverse to those of the Creditors."

"106. As a result of Yelverton challenging the Settlement Agreement, Webster in responsive pleadings and oral arguments before the Bankruptcy Court and District Courts has continually attacked Yelverton's credibility, truthfulness, integrity, and trustworthiness, with nothing in support, other than the fact of Yelverton objecting to Webster's 'collusive' Settlement Agreement with his 'close personal friend,' Tarkenton."

95.    Allegations of intent, actual or constructive knowledge, and the like are

"mixed" questions of law and fact, and must be accepted as true as being allegations of

fact, although conclusory.  Warren v. D.C., 353 F.3d 36, 39-40 (D.C. Cir. 2004).

96.    Even "broad" allegations of facts may defeat a Motion under Rule 12 (b)(6).

Holmes-Martin v. Leavitt, 569 F.Supp.2d 184, 193 (D.D.C. 2008).

97.    After Twombly, the Supreme Court affirmed that the Complaint need only

give "fair notice" of the claims.  Erickson v. Pardus, 127 S.Ct. 2197, 2200 (2007).

98.    A "Plaintiff is not required to plead in his Complaint all elements of a prima

facie case, or match facts to every element of a legal theory.  Miller v. Insulation

Contractors, Inc., 608 F.Supp.2d 97, 106 (D.D.C. 2009).

99. In a Motion under Rule 12 (b)(6), "ambiguities" in the pleading must be resolved in favor of the Plaintiff. Leftwich, id.

100. Where a Complaint would be dismissed for a failure to comply with Twombly/Iqbal, justice requires the Plaintiff be allowed the "opportunity to refine his allegations" without losing forever the right to litigate his claims on the merits, and thus before dismissal the Trial Court should freely give Leave to Amend the Complaint under FRCP, Rule 15 (a)(2). Rudder v. Williams, 666 F.3d 790, 796 (D.C. Cir. 2012).

101. The Bankruptcy Court, in its Decision, at p. 22, erred by suggesting that there are no filings in the Record and no evidence showing that Webster and Tarkenton always took the same position with respect to the interests of Marm, where Webster and Tarkenton were supposed adversaries. However, every filing made by them must be factually presumed as "collusion" by them for purposes of Rule 12 (b)(6). Warren, id.

102. Under Rule 12 (b)(6), the Trial Court's function is not to make findings of fact and conclusions of law. Leftwich, id.; Scheur, id. Thus, the Bankruptcy Court, in its Decision, at p. 26, erred by making findings of fact and conclusions of law that Webster's attacks as Chapter 7 Trustee on the Debtor were "well justified."

103. However, the Chapter 7 Trustee may not personally attack and smear the Debtor with unfounded accusations, and to do so is a breach of his fiduciary duties to the Debtor. In Re Vebeliunas, 231 B.R. 181, 187-196 (Bkrtcy. S.D.N.Y. 1999).

104. Thus, there must be an evidentiary Trial as to whether the Chapter 7 Trustee's repeated attacks on the Debtor were "justified," and whether the Debtor's "fresh start" from Bankruptcy was thwarted by the Trustee's breach of his fiduciary duties to the Debtor by continually smearing his reputation, and reflexively opposing him at all times.

(h) <u>The Bankruptcy Court failed to make any substantive analysis that the filings by the Debtor were indisputably absent any factual and legal basis</u>

105. The Bankruptcy Court, in its <u>Decision</u>, at pp. 24, 33, 35-36, erred by cavalierly bandying the label "frivolous" as to the filings made by the Debtor to defend his interests, and those of his Creditors, where the Court made <u>no</u> "substantive" analysis that the filings were "indisputably <u>absent</u> any factual and legal basis."

106. To be determined "frivolous," the filing must have <u>no</u> facts and <u>no</u> law in support, which must be demonstrated by the Court with "substantive" factual and legal analysis, and <u>not</u> render cursory speculation in only <u>disagreeing</u> with the arguments. <u>In Re Delaney</u>, 819 A.2d 968, 999 (D.C. 2003); <u>Sills v. Bureau of Prisons</u>, 761 F.2d 792, 794-795 (D.C. Cir. 1985); and <u>Nietzke v. Williams</u>, 490 U.S. 319, 325 (1989).

107. The assertion of the Bankruptcy Court that all the Debtor's filings are somehow "frivolous" is <u>not</u> based upon any "substantive" factual or legal analysis whatsoever, as required by <u>In Re Powell</u>, 851 F.2d 427, 431, and n. 14 (D.C. Cir. 1988).

108. The D.C. Circuit has clearly defined the "narrow" class of cases which may be deemed "frivolous," which are <u>only</u> those where there is "indisputably <u>absent</u> any factual and legal basis." <u>Sills, id.</u>, at 794.

109. Assertions of claims are <u>not</u> "frivolous," where they have <u>some</u> factual and legal support and are colorable, even though they may not succeed. <u>Ginsberg v. Granados</u>, 963 A.2d 1134, 1139 (D.C. 2009).

110. The Bankruptcy Court has simply failed to demonstrate that its "label" of "frivolous" has any "substantive" basis. <u>Speleos v. McCarthy</u>, 201 B.R. 325, 330 (D.D.C. 1996), because of the "Constitutional dimensions of the interests at stake, the Trial Court must make substantive findings," and <u>not</u> engage in conclusory "labels."

31

111.  With no "substantive" analysis as to the basis for its label of "frivolous," the Bankruptcy Court's Decision must be Vacated.  Kaempfer v. Brown, 872 F.2d 496, 496 (D.C. Cir. 1989); Richardson v. D.C., 2008 WL 2396186 (D.C. Cir. 2008).

112.  The Bankruptcy Court fails to acknowledge the law is well-established that a person has the right to zealously protect and defend in Court his legal and financial interests against violation.  Naegle v. Albers, 355 F.Supp.2d 129, 148 (D.D.C. 2005).

113.  What is at stake for the Debtor in the Bankruptcy proceeding is recovery of his life, his career, and his reputation --- which can only be done by recovery of his lawfully owned assets from non-Creditors in order to pay Non-Discharged debts to Creditors, and to have a surplus for himself for a "fresh start" after Bankruptcy.

114.  However, the Chapter 7 Trustee breached his fiduciary duties by giving Estate assets to non-Creditors to the exclusion of Creditors, and by personally attacking and smearing the reputation of the Debtor for challenging this "collusive" scheme, and thereby thwarting the Debtor in a "fresh start," which he is entitled under the Bankruptcy Code.  Burlingham v. Crouse, id., the two-fold purpose of Bankruptcy is to distribute Estate assets to Creditors, and then to give the Debtor a "fresh start" by liberally allowing him all rights under the Bankruptcy Code.

Request for Certification by the District Court Sua Sponte for Immediate Appeal
to the United States Court of Appeals per 28 U.S.C. 158 (d) (2) and FRBP, Rule 8006 (f)

115.  Pursuant to 28 U.S.C. 158 (d)(2) and FRBP, Rule 8006 (f), it is requested that the District Court sua sponte Certify this Appeal to the United States Court of Appeals for immediate consideration and decision.  This request is timely made within sixty (60) days of the final entry of judgment by the Bankruptcy Court on December 9, 2014.

116.   This Request for Certification meets the requirements of 28 U.S.C. 158 (d)(2)(A)(iii) that an immediate Appeal may materially advance the progress of the case or proceeding in which the Appeal taken, by having only one overall decision rendered.

117.   The Adversary Proceeding and the Decisions on Appeal from the Bankruptcy Court are inextricably interrelated with Case Nos. 14-7147 and 14-7149, which are now pending before the United States Court of Appeals, where there has been no Briefing.

118.   As opined by the Bankruptcy Court in the Decisions on Appeal, the facts in this Adversary Proceeding arise from the same circumstances as the Chapter 7 Trustee's Settlement Agreement, which it Approved on June 18, 2012.

119.   Nevertheless, there is no Res Judicata and no Collateral Estoppel, as is demonstrated in this Brief, at paras. 60-69, supra. See, Restatement (Second) Judgments, Section 26 (1)(c), id; Grimes, id.; Perry, id.; Stanton, id.; Lawlor, id.; Otherson, id.; FRBP, Rule 7001 (1), id.

120.   Thus, it is requested that the District Court sua sponte Certify this Appeal for immediate consideration by the United States Court of Appeals for one overall decision to be rendered for this proceeding and for related Case Nos. 14-7147 and 14-7149.

### Relief Requested in this Appeal

WHEREFORE, in view of the forgoing, the following Relief is requested:

* the District Court sua sponte Certify this Appeal for immediate consideration and decision by the United States Court of Appeals;

* the Decisions on Appeal be Vacated as wholly contrary to law;

* this Appeal be Remanded to the Bankruptcy Court for a Class Action on behalf of the Creditors to be Certified, for the Complaint to be so Amended, and for Discovery to commence;

* Webster and his law firm be disqualified from representing the Surety Bond.

33

This the 2nd day of February, 2015,

Respectfully submitted,

Stephan Thomas Yelverton, Pro Se,
601 Pennsylvania Ave, N.W., Suite 900 South
Washington, D.C. 20004
Tel. 202-702-6708
Fax 202-403-3801
styelv@aol.com

## ADDENDUM

### Key Statutes and Rules

11 U.S.C. 322………………………………………………….. Exhibit 1

28 U.S.C. 158 (d)(2)…………………………………………….. Exhibit 2

FRBP, Rule 2010 (b)…………………………………………….. Exhibit 3

FRBP, Rule 8006 (f)……………………………………………… Exhibit 4

Bankruptcy Decisions to be Certified
to the United States Court of Appeals………………………….. Exhibit 5

EXHIBIT 1

forms to be used to comply with section 308 of title 11, United States Code, as added by subsection (a) [See Bankruptcy Form No. 25C, eff. Dec. 1, 2008, set out in the Appendix to this title]."

## SUBCHAPTER II—OFFICERS

### § 321. Eligibility to serve as trustee

(a) A person may serve as trustee in a case under this title only if such person is—

(1) an individual that is competent to perform the duties of trustee and, in a case under chapter 7, 12, or 13 of this title, resides or has an office in the judicial district within which the case is pending, or in any judicial district adjacent to such district; or

(2) a corporation authorized by such corporation's charter or bylaws to act as trustee, and, in a case under chapter 7, 12, or 13 of this title, having an office in at least one of such districts.

(b) A person that has served as an examiner in the case may not serve as trustee in the case.

(c) The United States trustee for the judicial district in which the case is pending is eligible to serve as trustee in the case if necessary.

(Pub. L. 95–598, Nov. 6, 1978, 92 Stat. 2561; Pub. L. 98–353, title III, § 428, July 10, 1984, 98 Stat. 369; Pub. L. 99–554, title II, §§ 206, 257(c), Oct. 27, 1986, 100 Stat. 3098, 3114.)

#### HISTORICAL AND REVISION NOTES

##### LEGISLATIVE STATEMENTS

Section 321 indicates that an examiner may not serve as a trustee in the case.

##### SENATE REPORT NO. 95–989

Section 321 is adapted from current Bankruptcy Act § 45 [section 73 of former title 11] and Bankruptcy Rule 209. Subsection (a) specifies that an individual may serve as trustee in a bankruptcy case only if he is competent to perform the duties of trustee and resides or has an office in the judicial district within which the case is pending, or in an adjacent judicial district. A corporation must be authorized by its charter or bylaws to act as trustee, and, for chapter 7 or 13 cases, must have an office in any of the above mentioned judicial districts.

##### AMENDMENTS

1986—Subsec. (a). Pub. L. 99–554, § 257(c), inserted reference to chapter 12 in two places.
Subsec. (c). Pub. L. 99–554, § 206, added subsec. (c).
1984—Subsec. (b). Pub. L. 98–353 substituted "the case" for "a case" after "an examiner in".

##### EFFECTIVE DATE OF 1986 AMENDMENT

Effective date and applicability of amendment by section 206 of Pub. L. 99–554 dependent upon the judicial district involved, see section 302(d), (e) of Pub. L. 99–554, set out as a note under section 581 of Title 28, Judiciary and Judicial Procedure.
Amendment by section 257 of Pub. L. 99–554 effective 30 days after Oct. 27, 1986, but not applicable to cases commenced under this title before that date, see section 302(a), (c)(1) of Pub. L. 99–554.

##### EFFECTIVE DATE OF 1984 AMENDMENT

Amendment by Pub. L. 98–353 effective with respect to cases filed 90 days after July 10, 1984, see section 552(a) of Pub. L. 98–353, set out as a note under section 101 of this title.



### § 322. Qualification of trustee

(a) Except as provided in subsection (b)(1), a person selected under section 701, 702, 703, 1104,

1163, 1202, or 1302 of this title to serve as trustee in a case under this title qualifies if before seven days after such selection, and before beginning official duties, such person has filed with the court a bond in favor of the United States conditioned on the faithful performance of such official duties.

(b)(1) The United States trustee qualifies wherever such trustee serves as trustee in a case under this title.

(2) The United States trustee shall determine—

(A) the amount of a bond required to be filed under subsection (a) of this section; and

(B) the sufficiency of the surety on such bond.

(c) A trustee is not liable personally or on such trustee's bond in favor of the United States for any penalty or forfeiture incurred by the debtor.

(d) A proceeding on a trustee's bond may not be commenced after two years after the date on which such trustee was discharged.

(Pub. L. 95–598, Nov. 6, 1978, 92 Stat. 2562; Pub. L. 98–353, title III, § 429, July 10, 1984, 98 Stat. 369; Pub. L. 99–554, title II, §§ 207, 257(d), Oct. 27, 1986, 100 Stat. 3098, 3114; Pub. L. 103–394, title V, § 501(d)(3), Oct. 22, 1994, 108 Stat. 4143; Pub. L. 111–16, § 2(2), May 7, 2009, 123 Stat. 1607.)

#### HISTORICAL AND REVISION NOTES

##### LEGISLATIVE STATEMENTS

Section 322(a) is modified to include a trustee serving in a railroad reorganization under subchapter IV of chapter 11.

##### SENATE REPORT NO. 95–989

A trustee qualifies in a case by filing, within five days after selection, a bond in favor of the United States, conditioned on the faithful performance of his official duties. This section is derived from the Bankruptcy Act section 50b [section 78(b) of former title 11]. The court is required to determine the amount of the bond and the sufficiency of the surety on the bond. Subsection (c), derived from Bankruptcy Act section 50l [section 78(l) of former title 11], relieves the trustee from personal liability and from liability on his bond for any penalty or forfeiture incurred by the debtor. Subsection (d), derived from section 50m [section 78(m) of former title 11], fixes a two-year statute of limitations on any action on a trustee's bond. Finally, subsection (e) dispenses with the bonding requirement for the United States trustee.

##### AMENDMENTS

2009—Subsec. (a). Pub. L. 111–16 substituted "seven days" for "five days".
1994—Subsec. (a). Pub. L. 103–394 substituted "1202, or 1302" for "1302, or 1202".
1986—Subsec. (a). Pub. L. 99–554, § 257(d), inserted reference to section 1202 of this title.
Pub. L. 99–554, § 207(1), substituted "Except as provided in subsection (b)(1), a person" for "A person".
Subsec. (b). Pub. L. 99–554, § 207(2), amended subsec. (b) generally, adding par. (1), designating existing provisions as par. (2), substituting "The United States trustee" for "The court", "(A) the amount" for "(1) the amount", and "(B) the sufficiency" for "(2) the sufficiency".
1984—Subsec. (b)(1). Pub. L. 98–353 inserted "required to be".

##### EFFECTIVE DATE OF 2009 AMENDMENT

Amendment by Pub. L. 111–16 effective Dec. 1, 2009, see section 7 of Pub. L. 111–16, set out as a note under section 109 of this title.

EXHIBIT 2

(G) motions to terminate, annul, or modify the automatic stay;

(H) proceedings to determine, avoid, or recover fraudulent conveyances;

(I) determinations as to the dischargeability of particular debts;

(J) objections to discharges;

(K) determinations of the validity, extent, or priority of liens;

(L) confirmations of plans;

(M) orders approving the use or lease of property, including the use of cash collateral;

(N) orders approving the sale of property other than property resulting from claims brought by the estate against persons who have not filed claims against the estate;

(O) other proceedings affecting the liquidation of the assets of the estate or the adjustment of the debtor-creditor or the equity security holder relationship, except personal injury tort or wrongful death claims; and

(P) recognition of foreign proceedings and other matters under chapter 15 of title 11.

(3) The bankruptcy judge shall determine, on the judge's own motion or on timely motion of a party, whether a proceeding is a core proceeding under this subsection or is a proceeding that is otherwise related to a case under title 11. A determination that a proceeding is not a core proceeding shall not be made solely on the basis that its resolution may be affected by State law.

(4) Non-core proceedings under section 157(b)(2)(B) of title 28, United States Code, shall not be subject to the mandatory abstention provisions of section 1334(c)(2).

(5) The district court shall order that personal injury tort and wrongful death claims shall be tried in the district court in which the bankruptcy case is pending, or in the district court in the district in which the claim arose, as determined by the district court in which the bankruptcy case is pending.

(c)(1) A bankruptcy judge may hear a proceeding that is not a core proceeding but that is otherwise related to a case under title 11. In such proceeding, the bankruptcy judge shall submit proposed findings of fact and conclusions of law to the district court, and any final order or judgment shall be entered by the district judge after considering the bankruptcy judge's proposed findings and conclusions and after reviewing de novo those matters to which any party has timely and specifically objected.

(2) Notwithstanding the provisions of paragraph (1) of this subsection, the district court, with the consent of all the parties to the proceeding, may refer a proceeding related to a case under title 11 to a bankruptcy judge to hear and determine and to enter appropriate orders and judgments, subject to review under section 158 of this title.

(d) The district court may withdraw, in whole or in part, any case or proceeding referred under this section, on its own motion or on timely motion of any party, for cause shown. The district court shall, on timely motion of a party, so withdraw a proceeding if the court determines that resolution of the proceeding requires consideration of both title 11 and other laws of the United States regulating organizations or activities affecting interstate commerce.

(e) If the right to a jury trial applies in a proceeding that may be heard under this section by a bankruptcy judge, the bankruptcy judge may conduct the jury trial if specially designated to exercise such jurisdiction by the district court and with the express consent of all the parties.

(Added Pub. L. 98–353, title I, § 104(a), July 10, 1984, 98 Stat. 340; amended Pub. L. 99–554, title I, §§ 143, 144(b), Oct. 27, 1986, 100 Stat. 3096; Pub. L. 103–394, title I, § 112, Oct. 22, 1994, 108 Stat. 4117; Pub. L. 109–8, title VIII, § 802(c)(1), Apr. 20, 2005, 119 Stat. 145.)

AMENDMENTS

2005—Subsec. (b)(2)(P). Pub. L. 109–8 added subpar. (P).

1994—Subsec. (e). Pub. L. 103–394 added subsec. (e).

1986—Subsec. (b)(2). Pub. L. 99–554, in subpar. (B) substituted "interests" for "interest" and inserted reference to chapter 12, and in subpar. (G) inserted a comma after "annul".

EFFECTIVE DATE OF 2005 AMENDMENT

Amendment by Pub. L. 109–8 effective 180 days after Apr. 20, 2005, and not applicable with respect to cases commenced under Title 11, Bankruptcy, before such effective date, except as otherwise provided, see section 1501 of Pub. L. 109–8, set out as a note under section 101 of Title 11.

EFFECTIVE DATE OF 1994 AMENDMENT

Amendment by Pub. L. 103–394 effective Oct. 22, 1994, and not applicable with respect to cases commenced under Title 11, Bankruptcy, before Oct. 22, 1994, see section 702 of Pub. L. 103–394, set out as a note under section 101 of Title 11.

EFFECTIVE DATE OF 1986 AMENDMENT

Amendment by Pub. L. 99–554 effective 30 days after Oct. 27, 1986, see section 302(a) of Pub. L. 99–554, set out as a note under section 581 of this title.

## § 158. Appeals

(a) The district courts of the United States shall have jurisdiction to hear appeals[1]

(1) from final judgments, orders, and decrees;

(2) from interlocutory orders and decrees issued under section 1121(d) of title 11 increasing or reducing the time periods referred to in section 1121 of such title; and

(3) with leave of the court, from other interlocutory orders and decrees;

and, with leave of the court, from interlocutory orders and decrees, of bankruptcy judges entered in cases and proceedings referred to the bankruptcy judges under section 157 of this title. An appeal under this subsection shall be taken only to the district court for the judicial district in which the bankruptcy judge is serving.

(b)(1) The judicial council of a circuit shall establish a bankruptcy appellate panel service composed of bankruptcy judges of the districts in the circuit who are appointed by the judicial council in accordance with paragraph (3), to hear and determine, with the consent of all the parties, appeals under subsection (a) unless the judicial council finds that—

(A) there are insufficient judicial resources available in the circuit; or

(B) establishment of such service would result in undue delay or increased cost to parties in cases under title 11.

---

[1] So in original. Probably should be followed by a dash.

Not later than 90 days after making the finding, the judicial council shall submit to the Judicial Conference of the United States a report containing the factual basis of such finding.

(2)(A) A judicial council may reconsider, at any time, the finding described in paragraph (1).

(B) On the request of a majority of the district judges in a circuit for which a bankruptcy appellate panel service is established under paragraph (1), made after the expiration of the 1-year period beginning on the date such service is established, the judicial council of the circuit shall determine whether a circumstance specified in subparagraph (A) or (B) of such paragraph exists.

(C) On its own motion, after the expiration of the 3-year period beginning on the date a bankruptcy appellate panel service is established under paragraph (1), the judicial council of the circuit may determine whether a circumstance specified in subparagraph (A) or (B) of such paragraph exists.

(D) If the judicial council finds that either of such circumstances exists, the judicial council may provide for the completion of the appeals then pending before such service and the orderly termination of such service.

(3) Bankruptcy judges appointed under paragraph (1) shall be appointed and may be reappointed under such paragraph.

(4) If authorized by the Judicial Conference of the United States, the judicial councils of 2 or more circuits may establish a joint bankruptcy appellate panel comprised of bankruptcy judges from the districts within the circuits for which such panel is established, to hear and determine, upon the consent of all the parties, appeals under subsection (a) of this section.

(5) An appeal to be heard under this subsection shall be heard by a panel of 3 members of the bankruptcy appellate panel service, except that a member of such service may not hear an appeal originating in the district for which such member is appointed or designated under section 152 of this title.

(6) Appeals may not be heard under this subsection by a panel of the bankruptcy appellate panel service unless the district judges for the district in which the appeals occur, by majority vote, have authorized such service to hear and determine appeals originating in such district.

(c)(1) Subject to subsections (b) and (d)(2), each appeal under subsection (a) shall be heard by a 3-judge panel of the bankruptcy appellate panel service established under subsection (b)(1) unless—

(A) the appellant elects at the time of filing the appeal; or

(B) any other party elects, not later than 30 days after service of notice of the appeal;

to have such appeal heard by the district court.

(2) An appeal under subsections (a) and (b) of this section shall be taken in the same manner as appeals in civil proceedings generally are taken to the courts of appeals from the district courts and in the time provided by Rule 8002 of the Bankruptcy Rules.

(d)(1) The courts of appeals shall have jurisdiction of appeals from all final decisions, judgments, orders, and decrees entered under subsections (a) and (b) of this section.

(2)(A) The appropriate court of appeals shall have jurisdiction of appeals described in the first sentence of subsection (a) if the bankruptcy court, the district court, or the bankruptcy appellate panel involved, acting on its own motion or on the request of a party to the judgment, order, or decree described in such first sentence, or all the appellants and appellees (if any) acting jointly, certify that—

(i) the judgment, order, or decree involves a question of law as to which there is no controlling decision of the court of appeals for the circuit or of the Supreme Court of the United States, or involves a matter of public importance;

(ii) the judgment, order, or decree involves a question of law requiring resolution of conflicting decisions; or

(iii) an immediate appeal from the judgment, order, or decree may materially advance the progress of the case or proceeding in which the appeal is taken;

and if the court of appeals authorizes the direct appeal of the judgment, order, or decree.

(B) If the bankruptcy court, the district court, or the bankruptcy appellate panel—

(i) on its own motion or on the request of a party, determines that a circumstance specified in clause (i), (ii), or (iii) of subparagraph (A) exists; or

(ii) receives a request made by a majority of the appellants and a majority of appellees (if any) to make the certification described in subparagraph (A);

then the bankruptcy court, the district court, or the bankruptcy appellate panel shall make the certification described in subparagraph (A).

(C) The parties may supplement the certification with a short statement of the basis for the certification.

(D) An appeal under this paragraph does not stay any proceeding of the bankruptcy court, the district court, or the bankruptcy appellate panel from which the appeal is taken, unless the respective bankruptcy court, district court, or bankruptcy appellate panel, or the court of appeals in which the appeal in[2] pending, issues a stay of such proceeding pending the appeal.

(E) Any request under subparagraph (B) for certification shall be made not later than 60 days after the entry of the judgment, order, or decree.

(Added Pub. L. 98–353, title I, § 104(a), July 10, 1984, 98 Stat. 341; amended Pub. L. 101–650, title III, § 305, Dec. 1, 1990, 104 Stat. 5105; Pub. L. 103–394, title I, §§ 102, 104(c), (d), Oct. 22, 1994, 108 Stat. 4108–4110; Pub. L. 109–8, title XII, § 1233(a), Apr. 20, 2005, 119 Stat. 202.)

### REFERENCES IN TEXT

The Bankruptcy Rules, referred to in subsec. (c)(2), are set out in the Appendix to Title 11, Bankruptcy.

### AMENDMENTS

2005—Subsec. (c)(1). Pub. L. 109–8, § 1233(a)(1), substituted "Subject to subsections (b) and (d)(2)," for "Subject to subsection (b),".

Subsec. (d). Pub. L. 109–8, § 1233(a)(2), designated existing provisions as par. (1) and added par. (2).

---

[2] So in original. Probably should be "is".

EXHIBIT 3

(e) SEPARATE ACCOUNTS. The trustee or trustees of estates being jointly administered shall keep separate accounts of the property and distribution of each estate.

(As amended Mar. 30, 1987, eff. Aug. 1, 1987; Apr. 30, 1991, eff. Aug. 1, 1991; Mar. 27, 2003, eff. Dec. 1, 2003.)



### Rule 2010. Qualification by Trustee; Proceeding on Bond

(a) BLANKET BOND. The United States trustee may authorize a blanket bond in favor of the United States conditioned on the faithful performance of official duties by the trustee or trustees to cover (1) a person who qualifies as trustee in a number of cases, and (2) a number of trustees each of whom qualifies in a different case.

(b) PROCEEDING ON BOND. A proceeding on the trustee's bond may be brought by any party in interest in the name of the United States for the use of the entity injured by the breach of the condition.

(As amended Mar. 30, 1987, eff. Aug. 1, 1987; Apr. 30, 1991, eff. Aug. 1, 1991.)

### Rule 2011. Evidence of Debtor in Possession or Qualification of Trustee

(a) Whenever evidence is required that a debtor is a debtor in possession or that a trustee has qualified, the clerk may so certify and the certificate shall constitute conclusive evidence of that fact.

(b) If a person elected or appointed as trustee does not qualify within the time prescribed by §322(a) of the Code, the clerk shall so notify the court and the United States trustee.

(As amended Apr. 30, 1991, eff. Aug. 1, 1991.)

### Rule 2012. Substitution of Trustee or Successor Trustee; Accounting

(a) TRUSTEE. If a trustee is appointed in a chapter 11 case or the debtor is removed as debtor in possession in a chapter 12 case, the trustee is substituted automatically for the debtor in possession as a party in any pending action, proceeding, or matter.

(b) SUCCESSOR TRUSTEE. When a trustee dies, resigns, is removed, or otherwise ceases to hold office during the pendency of a case under the Code (1) the successor is automatically substituted as a party in any pending action, proceeding, or matter; and (2) the successor trustee shall prepare, file, and transmit to the United States trustee an accounting of the prior administration of the estate.

(As amended Mar. 30, 1987, eff. Aug. 1, 1987; Apr. 30, 1991, eff. Aug. 1, 1991.)

### Rule 2013. Public Record of Compensation Awarded to Trustees, Examiners, and Professionals

(a) RECORD TO BE KEPT. The clerk shall maintain a public record listing fees awarded by the court (1) to trustees and attorneys, accountants, appraisers, auctioneers and other professionals employed by trustees, and (2) to examiners. The record shall include

EXHIBIT 4

**Rule 8006. Certifying a Direct Appeal to the Court of Appeals**

(a) EFFECTIVE DATE OF A CERTIFICATION. A certification of a judgment, order, or decree of a bankruptcy court for direct review in a court of appeals under 28 U.S.C. §158(d)(2) is effective when:

(1) the certification has been filed;

(2) a timely appeal has been taken under Rule 8003 or 8004; and

(3) the notice of appeal has become effective under Rule 8002.

(b) FILING THE CERTIFICATION. The certification must be filed with the clerk of the court where the matter is pending. For purposes of this rule, a matter remains pending in the bankruptcy court for 30 days after the effective date under Rule 8002 of the first notice of appeal from the judgment, order, or decree for which direct review is sought. A matter is pending in the district court or BAP thereafter.

(c) JOINT CERTIFICATION BY ALL APPELLANTS AND APPELLEES. A joint certification by all the appellants and appellees under 28 U.S.C. §158(d)(2)(A) must be made by using the appropriate Official Form. The parties may supplement the certification with a short statement of the basis for the certification, which may include the information listed in subdivision (f)(2).

(d) THE COURT THAT MAY MAKE THE CERTIFICATION. Only the court where the matter is pending, as provided in subdivision (b), may certify a direct review on request of parties or on its own motion.

(e) CERTIFICATION ON THE COURT'S OWN MOTION.

(1) How Accomplished. A certification on the court's own motion must be set forth in a separate document. The clerk of the certifying court must serve it on the parties to the appeal in the manner required for service of a notice of appeal under Rule 8003(c)(1). The certification must be accompanied by an opinion or memorandum that contains the information required by subdivision (f)(2)(A)–(D).

(2) Supplemental Statement by a Party. Within 14 days after the court's certification, a party may file with the clerk of the certifying court a short supplemental statement regarding the merits of certification.

(f) CERTIFICATION BY THE COURT ON REQUEST.

(1) How Requested. A request by a party for certification that a circumstance specified in 28 U.S.C. §158(d)(2)(A)(i)–(iii) applies—or a request by a majority of the appellants and a majority of the appellees—must be filed with the clerk of the court where the matter is pending within 60 days after the entry of the judgment, order, or decree.

(2) Service and Contents. The request must be served on all parties to the appeal in the manner required for service of a notice of appeal under Rule 8003(c)(1), and it must include the following:

(A) the facts necessary to understand the question presented;

(B) the question itself;

(C) the relief sought;

(D) the reasons why the direct appeal should be allowed, including which circumstance specified in 28 U.S.C. §158(d)(2)(A)(i)–(iii) applies; and

(E) a copy of the judgment, order, or decree and any related opinion or memorandum.

(3) Time to File a Response or a Cross-Request. A party may file a response to the request within 14 days after the request is served, or such other time as the court where the matter is pending allows. A party may file a cross-request for certification within 14 days after the request is served, or within 60 days after the entry of the judgment, order, or decree, whichever occurs first.

(4) Oral Argument Not Required. The request, cross-request, and any response are submitted without oral argument unless the court where the matter is pending orders otherwise.

(5) Form and Service of the Certification. If the court certifies a direct appeal in response to the request, it must do so in a separate document. The certification must be served on the parties to the appeal in the manner required for service of a notice of appeal under Rule 8003(c)(1).

(g) PROCEEDING IN THE COURT OF APPEALS FOLLOWING A CERTIFICATION. Within 30 days after the date the certification becomes effective under subdivision (a), a request for permission to take a direct appeal to the court of appeals must be filed with the circuit clerk in accordance with F.R.App.P. 6(c).

(Added Apr. 25, 2014, eff. Dec. 1, 2014.)

Rule 8007. Stay Pending Appeal; Bonds; Suspension of Proceedings

(a) INITIAL MOTION IN THE BANKRUPTCY COURT.

(1) In General. Ordinarily, a party must move first in the bankruptcy court for the following relief:

(A) a stay of a judgment, order, or decree of the bankruptcy court pending appeal;

(B) the approval of a supersedeas bond;

(C) an order suspending, modifying, restoring, or granting an injunction while an appeal is pending; or

(D) the suspension or continuation of proceedings in a case or other relief permitted by subdivision (e).

(2) Time to File. The motion may be made either before or after the notice of appeal is filed.

(b) MOTION IN THE DISTRICT COURT, THE BAP, OR THE COURT OF APPEALS ON DIRECT APPEAL.

(1) Request for Relief. A motion for the relief specified in subdivision (a)(1)—or to vacate or modify a bankruptcy court's order granting such relief—may be made in the court where the appeal is pending.

(2) Showing or Statement Required. The motion must:

(A) show that moving first in the bankruptcy court would be impracticable; or

(B) if a motion was made in the bankruptcy court, either state that the court has not yet ruled on the motion, or state that the court has ruled and set out any reasons given for the ruling.

(3) Additional Content. The motion must also include:

(A) the reasons for granting the relief requested and the facts relied upon;

(B) affidavits or other sworn statements supporting facts subject to dispute; and

EXHIBIT 5

The document below is hereby signed.

Signed: December 8, 2014



_S. Martin Teel, Jr._
S. Martin Teel, Jr.
United States Bankruptcy Judge

UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| In re | ) | |
| | ) | |
| STEPHEN THOMAS YELVERTON, | ) | Case No. 09-00414 |
| | ) | (Chapter 7) |
| Debtor. | ) | |
| ———————————————— | ) | |
| | ) | |
| UNITED STATES EX REL. | ) | |
| STEPHEN THOMAS YELVERTON, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Adversary Proceeding No. |
| v. | ) | 14-10014 |
| | ) | |
| WENDELL W. WEBSTER, _et al._, | ) | Not for publication in |
| | ) | West's Bankruptcy Reporter. |
| Defendants. | ) | |

MEMORANDUM DECISION AND ORDER DENYING MOTION
TO ALTER OR AMEND DECISION PER FRCP, RULE 59(e),
AND MOTION FOR LEAVE TO AMEND COMPLAINT PER FRCP, RULE 15(a)

The court will deny the plaintiff Yelverton's _Motion
to Alter or Amend Decision per F.R.C.P., Rule 59(e), and Motion
for Leave to Amend Complaint per F.R.C.P., Rule 15(a)_ for the
following reasons.

The document below is hereby signed.

Signed: September 24, 2014



_S. Martin Teel, Jr._
_S. Martin Teel, Jr._
United States Bankruptcy Judge


UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| In re | ) | |
| | ) | |
| STEPHEN THOMAS YELVERTON, | ) | Case No. 09-00414 |
| | ) | (Chapter 7) |
| Debtor. | ) | |
| ⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯ | ) | |
| | ) | |
| UNITED STATES EX REL. | ) | |
| STEPHEN THOMAS YELVERTON, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Adversary Proceeding No. |
| v. | ) | 14-10014 |
| | ) | |
| WENDELL W. WEBSTER, _et al._, | ) | Not for publication in |
| | ) | West's Bankruptcy Reporter. |
| Defendants. | ) | |

## MEMORANDUM DECISION RE MOTION TO DISMISS

The plaintiff, Stephen Thomas Yelverton, is the debtor in

the bankruptcy case, pending under chapter 7 of the Bankruptcy

Code (11 U.S.C.), within which he pursues this adversary

proceeding against the chapter 7 trustee, Wendell W. Webster, and

Webster's surety, Federal Insurance Company. Yelverton is vexed

because Webster entered into a global settlement agreement with

## CERTIFICATE OF SERVICE

I, Stephen Thomas Yelverton, Pro Se, hereby certify that a copy of this Appellant Brief and Addendum was served the 2nd day of February, 2015, by e-mail or U.S Mail, First Class, postage prepaid, to the following:

Wendell W. Webster, Esq., Chapter 7 Trustee
Natalie S. Walker, Esq.
Webster, Frederickson
1775 K St., NW, Suite 600
Washington, DC 20006

Joseph A. Guzinski, Esq.
Office of U.S. Trustee
115 South Union St., Suite 210
Alexandria, VA 22314

Alexandra Senyi de Nagy-Unyom, Pro Se, Creditor
1260 Twenty-First St., N.W., #901
Washington, DC 20036

Richard J. Rodgers, Esq.
600 Baltimore Ave., Suite 202
Towson, MD 21204
Counsel for Creditor Sedghi Investment Properties, LLP

Stephen Thomas Yelverton, Pro Se